IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ROBIN A. MUNGER, | ) | CASE NO. 1:14 CV 2536 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |


**Introduction**

**A.     Nature of the case and proceedings**

Before me[1] is an action by Robin A. Munger under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her application

for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript

of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

[6] ECF # 13.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet. After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Munger, who was 52 years old at the time of the administrative hearing, did not graduate from high school.[9] She has a tenth grade education, which included special education classes.[10] Munger is unable to read the newspaper or write a simple note.[11] She reported prior employment as an assembly press operator, but was fired from her last job in 2003.[12]  Since then, she has looked for work, but struggles to complete job applications.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Munger had the following severe impairments: asthma, cervical degenerative disc disease, depressive disorder, anxiety disorder, and borderline intellectual functioning.[14]

---

[7] ECF # 17 (Munger's brief); ECF # 18 (Commissioner's brief); ECF # 19 (Munger's reply brief).

[8] ECF # 17-1 (Munger's charts); ECF # 18-1 (Commissioner's charts).

[9] ECF # 16 at 1.

[10] Transcript ("Tr.") at 41.

[11] *Id.*

[12] Tr. at 42.

[13] Tr. at 98.

[14] Tr. at 15.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Munger's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), as follows: lifting/carrying no more than 20 pounds occasionally and 10 pounds frequently; standing/walking for approximately six hours in an eight-hour workday; sitting for approximately six hours in an eight-hour workday; never climbing ladders, ropes or scaffolds; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching and crawling; limited to simple, repetitive tasks with no fast-paced work, no strict production quotas, only simple work decisions, and minimal changes in the work setting; and limited to frequent contact with the public, coworkers and supervisors.[15]

The vocational expert testified that Munger would be able to perform her past relevant work as an assembly press operator. In comparing Munger's residual functional capacity with the physical and mental demands of that work, the ALJ found Munger able to perform it as actually and generally performed.[16] The ALJ, therefore, found Munger not under a disability.[17]

## C.    Issue on judicial review and decision

Munger asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Munger presents the following issue for judicial review:

---

[15] *Id.* at 19.

[16] *Id.*

[17] *Id.* at 24.

-3-

1.      Whether the ALJ properly applied the treating physician rule to the opinions of treating internist Raimantas Drublionis, M.D. and treating psychiatrist Samar El-Sayegh, M.D.

For the reasons that follow, I conclude that the ALJ's decision did not properly apply the treating physician rule to the opinion of Dr. Drublinios, the case must be remanded for further proceedings.

## Analysis

**A.      Applicable law**

*1.      Standard of review*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Munger filed only an application for supplemental security income benefits.

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

---

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on

---

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

-11-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

---

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

## B.    Application of standards

This matter concerns the ALJ's handling of the opinions of two treating physicians. Munger argues that because the ALJ violated the treating physician/good reasons rule in discounting the functional limitations opinions of her treating internist Dr. Raimantas Drublinois, M.D., and her treating psychologist Dr. Samar El Sayegh, M.D., the final decision of the ALJ is not supported by substantial evidence.

The record here contains an earlier 2012 finding that Munger was capable of performing medium work.[69] The current ALJ, however, chose not to adopt that finding, citing the fact that "the current record contains new and material evidence."[70] In that regard, the ALJ earlier specifically cited:

---

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

[69] Tr. at 21.

[70] *Id*.

(1) a March 2013 treatment note that Munger's hypertension was "improved" as a result of compliance with treatment; [71]

(2) a February 2014 note that Munger's lumbar degenerative back disease was "mild," despite her "history of lower back pain;"[72]

(3) findings from March 2013 that Munger "exhibited intact reflexes in the lower extremities without swelling or joint tenderness, and her extremities were normal;[73]and

(4) notes from May 8, 2013 that despite complaints of bilateral foot pain, her gait was normal.[74]

It is against that background of findings in the opinion, which cited specific medical evidence in the record that dates from after 2012, that the ALJ considered a 2009 RFC opinion from Dr. Drublinois, as well as a 2012 opinion from the same source.[75] The ALJ first recounted the specific physical functional limitations of each of these opinions before concluding that "given the balance of the medical evidence of record, the undersigned finds that the claimant has a less restrictive residual functional capacity to a reduced range of light work."[76]

---

[71] *Id*. at 15 (citing record).

[72] *Id*. (citing record).

[73] *Id*. (citing record).

[74] *Id*. (citing record).

[75] *Id*. at 22.

[76] *Id*.

Although I am certain the Commissioner and the ALJ must be exasperated by my repeated frustrations with how the treating physician/good reasons rule is actually implemented, I restate that the ALJ here made absolutely no effort to conduct the distinct, two-step analysis prescribed in the regulations as described by *Gayheart* as concerns the opinions of Dr. Drublinios. Rather, with simply a fragmentary reference to purportedly contrary functional limitations contained in "the balance of the medical evidence of record," the ALJ gave Munger a different physical functional limitation and moved on.

Munger, with more than some justification, rightly calls my attention to prior decisions of the Sixth Circuit[77] and this Court[78]criticizing the Commissioner for ignoring the requirements of *Gayheart*, for ignoring entirely the requirement to give some weight to a treating source opinion, and for seeking to justify the ALJ's decision by invoking either unspecified "other evidence of record," or by citations to parts of the record not mentioned in the opinion.

All that remains true here. But as *Hutchison* also noted, where the ALJ did cite to some specific portions of the record that may support a lesser weight given to the opinion of a treating source, the matter is not as clear cut. In *Hutchison*, for example, I noted that a cited finding of GAF score of 60 might "conceivably be inconsistent" with the opinion of the

---

[77] *Friend,* 375 Fed. App'x at 551-52.

[78] *Hutchison v. Commissioner of Social Security*, 2014 WL 4852269 (N.D. Ohio Sept. 29, 2014),

treating source, and so justify a lesser weight to any opinion.[79] Only the fact that "a GAF scores can and does fluctuate" ultimately precluded my finding in *Hutchison* that this single inconsistency provided a "good reason" to discount the opinion of the treating source.[80]

Here the ALJ's opinion contains multiple reference, all supported by citations to the record, to medical evidence that post-dates the RFC opinions in question, which appear to support the ALJ's decision to adopt a less restrictive RFC from that given in the opinions. As such, this is a considerably stronger case than *Hutchison* for overlooking any failure to follow the analytical framework set out in *Gayheart.* A remand in this instance might be viewed as a technical focus on form rather than judicious acceptance of reality; in particular, the reality that very often ALJ opinions do not organize supporting evidence in such a way as to directly link that evidence to the conclusion it purportedly supports.

To now reach that result for that reason has a strong appeal, if for no other reason than that a remand would be extremely likely to produce exactly that same outcome, with this opinion serving as the clear roadmap for what must be done and why.

But a remand serves notice, as *Gayheart* itself states, that following proper procedure and form is an essential component of what is promised to claimants, and that diminishing the weight afforded to treating sources is serious business, to be done only in such a way that a claimant fully understands why it was done, and the reviewing court can undertake its

---

[79] *Id*. at *7.

[80] *Id*. at *8.

duties without itself first needing to assemble the reasoning it will ultimately then need to reach a decision.

Bottom line,  from my own assembling of the evidence - not a conclusion articulated by the ALJ - the early opinion references to various 2013 and 2014 medical records might be construed as the "balance of the medical evidence" that the ALJ referred to when he downgrading the weight given to the 2009 and 2012 RFC opinions of Dr. Drublinois. I, therefore, remand this case so that the ALJ can expressly state the specific medical evidence supporting the weight ultimately assigned.

On remand, I did not specifically address the concerns about the opinions of Dr. El-Sayegh.  This should not be understood as either approval or disapproval of how his opinions were evaluated.  To the extent that these opinions are viewed having been superceded by later evidence, that conclusion and its supporting reasoning must be made clear on the face of the opinion to the reviewing court.

### Conclusion

For the reasons stated, the decision of the Commissioner denying Munger's application for supplemental security income is reversed and the matter remanded for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: February 26, 2016                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge